# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CEDAR LANE TECHNOLOGIES INC., <br><br>　　　　　Plaintiff, <br><br>v. <br><br>WIDEOPENWEST, INC. <br><br>　　　　　Defendant. | Civil Action No. 1:25-cv-00327-RMR-SBP |

## STIPULATION ~~AND PROPOSED~~ ORDER REGARDING E-DISCOVERY

Upon the stipulation of the parties, the Court ORDERS as follows:

**I.   SCOPE**

1.   This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.   This Order does not displace Rules 26 or 34 or diminish a party's obligations to search for, collect, and produce discoverable information that is kept in the ordinary source as ESI.

3.   This Order may be modified in the Court's discretion or by stipulation with the Court's approval.

**II.   DEFINITIONS**

The following definitions will apply:

4. "**Bates Number**" means a unique consecutive alphanumeric identifier without spaces associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length. The Bates numbers must be in a consistent font type and size. The producing party must make reasonable efforts to avoid obscuring information originally appearing on the document.

5. "**Document**" means anything subject to production or inspection under Federal Rule of Civil Procedure 34(a), including (1) any document or ESI—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (2) any tangible thing.

6. "**ESI**" means any electronically stored file or information kept as such in the ordinary course, consistent with Federal Rule of Civil Procedure 34, including without limitation (1) electronically stored email messages; (2) word processing documents (created with, for example, Microsoft Word and WordPerfect); (3) files formatted for display in a web browser, for example, files with an .htm, or .html extension; (4) Adobe Acrobat files; (5) ASCII text files, for example, files with a .txt file extension; (6) presentation documents and embedded files (created with, for example, Microsoft

PowerPoint); and (7) Microsoft Excel files or other .csv extension files.

7. "**Hard Copy Document**" means a document kept in physical form, as opposed to electronic form, in the ordinary course of a party's business.

8. "**Native format**" means the associated file structure defined by the original application with which an electronic file was created. For example, the native format associated with a Microsoft Word 2007 file is .docx and the native format associated with an Adobe Acrobat file is .pdf.

9. "**Spreadsheet**" means an electronic file that displays multiple cells that together make up a grid consisting of rows and columns, each cell containing either alphanumeric text or numeric values, including, but not limited to, files created with Microsoft Excel.

### III. CONSIDERATIONS

10. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, the parties must propound specific email production requests.

11. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

### IV. EMAIL PRODUCTION REQUESTS

12. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patent, the prior art, the accused product, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

13.     Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

14.     Each requesting party shall limit its email production requests to a total of 5 custodians per producing party for all such requests. A requesting party reserves the right to identify additional custodians who it believes should have email searched.  The parties will meet and confer to attempt to agree on the selection of custodians.  The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

15.     Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.

16.     The e-mail documents responsive to the search terms shall not exceed 2,000 documents per custodian (including families).  If the search terms proposed per custodian result in more than 2,000 documents (including families), such search is presumptively unreasonable and the requesting party shall narrow its search terms to produce documents within the limit.  For example, if a search term hits on an email that has four attachments, that search term counts as five hits and all five documents shall be produced.  The same is true if a search term hits on an attachment of an email.  This

narrowing process can be iterative, but not unduly burdensome on the producing party. After each party runs the requested search terms, the responding party shall send the requesting party the hit results for each search term and custodian. Shortly thereafter, the parties shall meet and confer to discuss the search results and any modifications, if any, to the search terms.

17. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

18. The parties agree that email productions resulting from email production requests within the bounds of this Order shall be produced as-is, subject to a privilege review, with no relevance screening.

## IV. PRODUCTION PROTOCOLS

Electronic data should be provided in the following format:

19. **TIFFs**. Single-page 300 dpi CCITT Group IV black and white TIFFs should be provided (unless the ESI contains color, as discussed below), with page break information in load file identifying document start and end.

   a. <u>Conversion of Word documents, OneNote, Outlook, WordPad, Paint, Visio, Publisher or other similar files</u>: When the above referenced types of documents are converted to TIFFs, the version that will be converted is as it was last saved by the custodian. This means that if it was last saved with track changes turned on that the images and metadata will reflect the track changes.

5

    b. <u>Conversion of PowerPoint documents</u>: When PowerPoint documents are converted to TIFFs, the version that will be converted will show the speaker notes, to the extent they exist.

20. **Color**. Any color images for which color is critical to the document should be produced as single page color jpegs (.JPG); if color is not critical then the document should be produced in black and white. If after reviewing a black and white document, a receiving party believes that color is critical to a document, the parties agree to engage in discussion regarding production of discrete documents in color, which production will not be unreasonably withheld. ESI containing color will be provided in color, as requested.

21. **Database Load Files/Cross-Reference Files**. Documents should be provided with (1) a Concordance delimited file and (2) an Opticon delimited file. The objective coding and/or electronic file metadata should be provided in the following format:

    a. Fields should be delimited by the default Concordance field delimiter for ANSI character 20 ().

    b. String values within the fields should be enclosed with a text delimiter (þ).

    c. The first line should contain objective coding and/or electronic field metadata headers, and below the first line, there should be exactly one line for each document.

    d. Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row.

    e. Multi-values should be separated by a semicolon.

22. **Text files**. For each document, a document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file, and each text file will be named using its corresponding image files (e.g., ABC0000001.TXT). Documents for which text cannot be extracted will be produced with OCR.

23. **Redactions**. With respect to documents containing redacted text, no text will be provided for the redacted portion. OCR will be provided for the unredacted portions of the documents.

   a. In the event the producing party finds that redactions are needed in an email, the producing party shall redact only privileged information within the body of the email, in addition to the subject line, if it reveals privileged information. Other identifying information, such as the To/From/Bcc, for example, shall not be redacted.

   b. In the event the producing party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

24. **Unique IDs**. Each image should have a unique file name which will be the Bates number of that page. The Bates number must appear on the face of the image in the lower right corner (e.g., ABC0000001.TIF).

25. **Metadata**. Wherever feasible, the producing party shall include accompanying metadata in the load file. The parties agree not to remove metadata from

native production. To the extent they are reasonably available, and except with respect to paper documents or documents with metadata redacted in whole or in part on grounds of privilege, metadata fields to be included in the DAT file are identified in the attached **Exhibit A**.

26.     **Native Format**. The parties have agreed that the following documents will be produced in native format and should contain the Bates number and confidentiality designation of the file in the file title: Excel files, Access Files, Microsoft Project Files, CAD files, GDS files, and GDSII files. The parties reserve their rights to request additional electronic documents, including PowerPoint presentations, in their native format. Native files will be produced with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation (in accordance with the Protective Order governing this Action), and the name of the native file.

   a. If production of a document in TIFF format is impracticable or unreasonable (such as video, animation, or audio files and lengthy Excel files), the producing party should produce such document in native format in a manner that preserves the integrity of the files. Native files shall be named with the corresponding Production Bates Number. A link to the native files shall be provided in a Native Path field within the load file. A slip sheet containing the phrase "Produced as Native" with the confidentiality designation and bates number should be provided for each item produced in a native format.in TIFF format.

   b. After initial production of ESI in TIFF format, a party wanting to receive a native format copy of a document may make a reasonable request.

27. **Databases**. Certain types of databases kept in the normal course of business contain information that allows for analysis and computation and as such the data may be produced in an electronic format. Data from these types of databases may be produced in database or delimited text file format, as reasonably available.

28. **Non-convertible Files**. Certain types of files such as system, program, video, and sound files may not be amenable to conversion into anything meaningful in TIFF format.

   a. Responsive, non-convertible files will be produced in the form of native files with a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.brd *.cab *.cfg *.chi *.chm *.com *.dll *.dsn *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opj *.opt *.pdb *.pch *.psd *.psp *.ptf *.ram *.res *.rm *.rmi *.step *.sys *.swf *.snd *.tag *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd.

   b. Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation, and the name of the non-convertible file, including the file extension.

   c. Nothing herein is intended to include productions of data produced from databases.

29. **Hard Copy Documents**. The parties agree to use reasonable efforts to ensure that hard copy (paper) documents shall be scanned, logically unitized, and produced electronically as specified in the form of production above. This provision does

not obligate any party to produce documents in a manner other than in which those documents were kept in the ordinary course of business such that hard copy documents that are not scanned into electronic form prior to the date of production may be produced in the same manner in which they are maintained (e.g., hard copies). Copies of such hard copy documents may be made available for inspection and copying or may be delivered to the office of counsel for the requesting party. However, to the extent either party wishes to proceed in a manner other than scanning and electronically producing hard copies of documents, the parties shall meet and confer to reach a mutually acceptable method for producing the documents or making them available for inspection.

30.  **Custodian Information**. Custodian information shall be populated for hard copy (paper) documents and loose electronic documents by the person or department from which the document was collected. If possible, custodian information for emails should be populated by the name of the person from whom they were collected. The parties may populate a calculated custodian field for email and electronic documents where the custodian field cannot be identified through the collection process. The custodian field for email may be populated with the company name only when the company has a consolidated email server that does not preserve "custodian" information. Emails will be grouped by custodian.

31.  **Parent-child Relationships**.  Parent-child relationships (the association between an attachment and its parent document) shall be preserved whenever reasonable in such a way that a document and any responsive attachments to that document are produced in the same production set and are identifiable as parent and child.

32. **Attachments**. Only responsive attachments need to be produced. Non-responsive attachments may be withheld. If any attachment to an email is responsive, then the cover email shall be produced for context, regardless of the cover email's responsiveness, unless the cover email is withheld on the basis of the attorney-client privilege, work product doctrine, or other applicable privilege.

33. **De-duplication**. The parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that, if agreed upon, exact duplicates of a document (i.e., all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced.

34. **Email Thread Analysis**. Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails must include all of the responsive information from a thread, including attachments, subject to paragraph 33, above. For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced. This shall apply even if an attachment is withheld pursuant to paragraph 33, above.

35. **Production Media and Labels**. Documents will be produced either via FTP or on CD-ROM or DVD or on portable hard drives. The parties agree to attach a label to each piece of media containing production data. The label will provide the following information: case name, case number, production date, volume number, Bates range, and confidentiality designation (if applicable).

36. **Confidentiality Designations**. The confidentiality designation requested

for each document shall be electronically branded on each page of the document (with the exception of documents produced as native format, as specified above) and shall also be indicated in the metadata load file.

37. **Privilege Logs**. Parties will provide a log of all documents withheld or redacted on the basis of privilege, work product protection, or other privilege. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the following methods. For hard copy documents, each party shall create privilege logs using the standard privilege log.

    a. Automated Log. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

        i. SUBJECT
        ii. FILE NAME
        iii. AUTHOR
        iv. SENDER/FROM
        v. RECIPIENTS/TO
        vi. CC
        vii. BCC
        viii. SENT DATE TIME
        ix. RECEIVED DATE TIME
        x. FILE CREATED DATE TIME
        xi. FILE LAST MODIFIED DATE TIME
        xii. BEG BATES
        xiii. END BATES
        xiv. BEG ATTACH BATES
        xv. END ATTACH BATES

    b. Additional fields to be populated manually and included on the Automated

    log:

        i. PRIVILEGE TYPE (AC, WP or other)

        ii. REDACTED (a field indicating whether the document has been produced with redactions)

  c. With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised. Should the receiving party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within fourteen (14) days of the request, or within such other reasonable time as the parties may agree or the Court may order.

  d. Standard Log. A standard privilege log will include these standard fields: beg bates; end bates; author/sender/from; recipients/to; cc; bcc; date; privilege type; redacted; and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Parties shall also populate a field with all other participants identified on the face of the document not already captured in the top email of the email string. Other participants need only be identified for the email strings which are withheld as entirely privileged.

  e. Documents dated after the filing of the lawsuit containing privileged and/or

work product material relating to the lawsuit do not need to be logged.

38. **Inadvertent Production of Documents**. Inadvertent production of any document produced in response to discovery requests in this action by any party or non-party, that a party or non-party later claims should have been withheld on grounds of a privilege, including the work-product doctrine, will not be deemed to waive any privilege or work-product protection. The procedure for addressing the inadvertent production of documents is more fully addressed in the governing Protective Order.

39. **No Obligation to Convert Third-Party Productions**. The parties agree that any document production received from a third party shall be produced in the format in which it was received.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: June 16, 2025

/s/ Isaac Rabicoff
Counsel for Plaintiff

Dated: June 16, 2025

*/s/ Richard L. Brophy*
Counsel for Defendant

SO ORDERED.

Dated this 20th day of June, 2025.

BY THE COURT

_____
Susan Prose
United States Magistrate Judge

# EXHIBIT A

| FIELD | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| **Bates Begin** | Bates number of the first page in the document. | ABC00000001 |
| **Bates End** | Bates number of the last page in the document. | ABC00000015 |
| **Family Begin** | Bates number of the first page in the document family. | ABC00000001 |
| **Family End** | Bates number of the last page in the document family. | ABC00000030 |
| **Page Count** | Number of pages produced. | 15 |
| **Custodian** | The name of the custodian of this document. | Doe, John |
| **All Custodians** | When documents have been globally deduplicated, the names of the other custodians who also possessed the document. | Smith, Mary; Jones, William; Brown, Jane |
| **From** | Author of the e-mail | Doe, John <jdoe@company.com> |
| **To** | Recipient(s) of the e-mail | Smith, Mary <msmith@company.com>; Jones, Williams <jwilliams@company.com> |
| **CC** | CC recipients of the e-mail | Brown, Jane <jbrown@company.com> |
| **BCC** | Blind CC recipients of the e-mail | Doe, John <jdoe@company.com> |
| **E-Mail Subject** | Subject of the e-mail message | RE: Our Project |
| **File Name** | Original file name of the document; may contain the subject of the e-mail for e-mails | RE Our Project.msg MyAttachment.xlsx |
| **File Extension** | Original file extension of the document when it was collected | Msg |
| **Author** | Value of the author field in the native file | Doe, John |
| **Date Sent** | Date e-mail was sent | 12/31/2013 |
| **Time Sent** | Time e-mail was sent | 14:54:27 |
| **Date Received** | Date e-mail was received | 12/31/2013 |
| **Time Received** | Time e-mail was received | 14:54:29 |

| | | |
|---|---|---|
| **Date Created** | Date document was created | 12/30/2013 |
| **Time Created** | Time document was created | 18:50:20 |
| **Date Modified** | Date document was last modified | 12/31/2013 |
| **Time Modified** | Time document was last modified | 09:30:15 |
| **Source Path** | Original path to the folder or directory where the document was stored. | Inbox\MyFolder C:\Users\jdoe\My Documents |
| **MD5 Hash** | Unique identifier generated using the MD5 cryptographic hash function. | D564668821C34200FF3E32C9BFDCCC80 |
| **Confidentiality** | The confidentiality designation requested for this document. | Highly Confidential |
| **Text File** | Location of the text file, relative to the root of the volume. | TEXT\000001\ABC00000001.TXT |
| **Native File** | For documents produced natively, a link to the location of the native file, relative to the root of the volume. | NATIVE\000001\ABC00000015.XLSX |